**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**LYNN FELDMAN,**
*as Chapter 7 Trustee of the Estate of Image Masters, Inc., et al.,*

**Plaintiffs,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION,**
*as Receiver for Washington Mutual Bank,*

**Defendant.**

**Civil Action No. 09-2152 (ESH)**

**MEMORANDUM OPINION**

This matter concerns mortgage payments that six bankrupt businesses made to a failed bank in connection with a Ponzi scheme. Plaintiff Lynn Feldman, Chapter 7 Trustee of the estates of the businesses, filed this lawsuit against the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the bank, to avoid and recover approximately $11,894,719.17 in transfers Feldman alleges the bank knew or should have known were fraudulent. (Am. Compl. ¶¶ 49–53, ECF No. 18.)

The FDIC moves the Court to dismiss the amended complaint on multiple grounds: lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), failure to state a claim upon which relief can be granted under Rule 12(b)(6), failure to plead facts with sufficient particularity under Rule 9(b), and failure to join required parties under Rule 12(b)(7). (Def.'s Mot., Sept. 1, 2016, at 2–3, ECF No. 19). The FDIC further requests that the Court strike Feldman's demand for a jury trial. (*Id.* at 28.)

Upon consideration of the pleadings and for the reasons that follow, the FDIC's motion to dismiss will be granted. Because the Court finds that it does not have jurisdiction, it need not address the FDIC's other arguments in favor of dismissal or its argument that the jury demand should be stricken.

**BACKGROUND**

The FDIC challenges this Court's jurisdiction on administrative-exhaustion grounds, and for similar reasons, it argues that Feldman's claim is time-barred. The sequence of events leading up to the lawsuit is therefore relevant to the disposition of the motion.

Wesley Snyder was the sole owner and operator of Image Masters, Inc., and five other businesses through which Snyder perpetuated a multi-million dollar Ponzi scheme from 1988 to 2007. (Am. Compl. ¶¶ 5, 10, 44.) As part of the illegal scheme, Snyder convinced homeowners with existing mortgages to take out new, larger mortgages and give the proceeds of the refinancing to Snyder. (*Id.* ¶ 20.)[1] Snyder did not use the proceeds of refinancing to make investments or to immediately pay down the principal on the new mortgages, as the homeowners believed he would. (*Id.* ¶ 21.) Instead, Snyder used the money to perpetuate his scheme, ultimately stealing tens of millions of dollars from more than 800 homeowners. (*Id.* ¶¶ 23–24, 44.) Washington Mutual Bank was one of the banks that extended new mortgages to the victims of Snyder's scheme. (*Id.* ¶ 12.)

[1] The victims would make monthly payments to Synder's businesses in amounts less than were actually due to the banks. (Am. Compl. ¶ 23.) Synder would send payments to the banks, making up the shortfall with proceeds from new victims' mortgage refinancing. (*Id.* ¶ 24.) Neither Snyder nor his businesses had any contractual relationship with the banks, and they did not appear on the banks' records. (*See id.* ¶ 26.)

On September 18, 2007, after the Ponzi scheme collapsed, Snyder's business entities each filed a voluntary petition for Chapter 7 bankruptcy. (*Id.* ¶ 2.)[2] Feldman was appointed as interim Chapter 7 Trustee of the estates of Snyder's businesses on September 19, 2007, the day after they filed for bankruptcy. (*Id.* ¶ 3.)[3]

On September 25, 2008, over a year after Feldman became the Chapter 7 Trustee, the Office of Thrift Supervision closed Washington Mutual and appointed the FDIC as receiver pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub. L. No. 101-83, 103 Stat. 183 (1989) (codified in various sections of Title 12 of the U.S. Code). (Def.'s Mot. at 10; *see* Am. Compl. ¶ 7.) The FDIC set December 30, 2008, as the deadline for filing administrative claims in the receivership and published notices of the receivership and claims deadline in the Wall Street Journal on October 1, 2008, and October 31, 2008. (*See* Def.'s Mot., Ex. A.).

On October 8, 2008, less than two weeks after Washington Mutual closed, Feldman sent a letter addressed to Mr. David Schneider, President of Washington Mutual Home Loan, Inc., to "advise[] Washington Mutual of her . . . claims." (Am. Compl. ¶ 54.) Feldman did not receive a response to her letter from the former bank or from the FDIC. (*See id.* ¶¶ 54–55.)

Just under ten months after sending the letter to Schneider, Feldman filed a proof of claim with the FDIC, as receiver for Washington Mutual, on August 3, 2009. (*Id.* ¶ 55.) On or about September 18, 2009, the FDIC sent a letter to Feldman, which she received on September 24, 2009, disallowing the claim as untimely. (*See id.* ¶ 56.) Finally, on November 16, 2009,

[2] Snyder pleaded guilty to mail fraud in the Middle District of Pennsylvania. (Am. Compl. ¶ 45.)

[3] Feldman became the permanent Trustee on November 27, 2007. (Am. Compl. ¶ 3 n.1.)

Feldman brought this action against the FDIC, seeking review of the FDIC's decision to disallow her claims. (*Id.* ¶¶ 49–53.)[4]

**STANDARD OF REVIEW**

The FDIC has moved, *inter alia*, to dismiss for lack of subject-matter jurisdiction. When presented with a motion to dismiss on jurisdictional and other grounds, courts should first consider the Rule 12(b)(1) jurisdictional challenge. *See Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004) ("The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds." (quoting *Tuck v. Pan American Health Organization*, 668 F.2d 547, 549 (D.C. Cir. 1981))); *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 920–21 (D.C. Cir. 1999) (citation omitted) (declining to issue a ruling on the merits after holding the court lacked jurisdiction).

A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual. "If a defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (citing *I.T. Consultants, Inc. v. Pakistan,* 351 F.3d 1184, 1188 (D.C. Cir. 2003)). In a factual challenge, "the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). It

---

[4] On February 22, 2010, the Court granted Feldman's unopposed motion to stay the case pending the disposition of a related matter in the United States District Court for the Eastern District of Pennsylvania. On May 3, 2016, the Court granted Feldman's unopposed motion to lift the stay.

must "go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Id.*

Where, as here, the moving party has raised a factual challenge, "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *See Erby,* 424 F. Supp. 2d at 182 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). "While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citations and quotation marks omitted) (alteration in original).

**ANALYSIS**

Feldman invokes FIRREA as the basis of federal jurisdiction in this case. (*See* Am. Compl. ¶ 1 (citing 12 U.S.C. § 1821(d)(6)).) The FDIC argues that this Court is deprived of jurisdiction because, by not filing a timely claim with the FDIC, Feldman failed to exhaust the administrative remedies available to her.[5] Feldman contends that her failure to file a claim by the FDIC's deadline is excused by the late-filed claims exception, 12 U.S.C. § 1821(d)(5)(C)(ii), and that she therefore fully complied with FIRREA's administrative-claims process. The Court disagrees.

**I. THE FIRREA CLAIMS PROCESS IS JURISDICTIONAL.**

As "courts of limited subject-matter jurisdiction," federal courts have "the power to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Commerce,* 613 F.3d 1147, 1151

[5] The FDIC also argues that the claims are statutorily time-barred. *See infra* Part III.

(D.C. Cir. 2010)). Under FIRREA, Congress has circumscribed federal jurisdiction over claims against failed banks that are in receivership with the FDIC. *See* 12 U.S.C . § 1821(d)(13)(D); *id.* § 1821(d)(6). In *Freeman v. FDIC*, the D.C. Circuit explained that "where a claimant has . . . failed to initiate an administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court." 56 F.3d 1394, 1400 (D.C. Cir. 1995) (quoting *Marquis v. FDIC*, 965 F.2d 1148, 1151–52 (1st Cir. 1992)).

Subject to one relevant exception, FIRREA provides that

> no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C . § 1821(d)(13)(D). Notwithstanding § 1821(d)(13)(D), "[u]nder § 1821(d)(6) both the United States District Court for the District of Columbia and the district court for the district where the financial institution has its principal place of business have jurisdiction to review *de novo* claims filed with, and processed by, the FDIC under its administrative claims process." *Freeman*, 56 F.3d at 1400 (citation omitted). Thus, as a prerequisite to judicial review, a claimant must first exhaust the administrative remedies available to her under FIRREA by filing an administrative claim with the FDIC. *Id.* at 1399.

FIRREA empowers the FDIC to decide "claims [against the assets of failed banks held by the FDIC as receiver] under a process established by statute and FDIC regulations." *Id.* (citing 12 U.S.C. §§ 1821(d)(3)(A), 1821(d)(4)). In order to initiate the administrative-claims process, the FDIC must "publish a notice 'to the depository institution's creditors'" and "mail a 'similar' notice to 'any creditor shown on the institution's books.'" *Id.* (quoting 12 U.S.C.

§§ 1821(d)(3)(B), 1821(d)(3)(C)). The notice must "specify[] a date by which claims must be presented, not less than 90 days after publication." *Id.* (citing 12 U.S.C. § 1821(d)(3)(B)).

Once a claim is filed with the FDIC, the FDIC has 180 days to allow or disallow the claim. *Id.* (citing 12 U.S.C. § 1821(d)(5)(A)). If the claim is disallowed, the claimant may seek review of the decision in district court by filing an action within 60 days of the issuance of the FDIC's decision. *Id.* at 1400 (citing 12 U.S.C. § 1821(d)(6)). If the FDIC does not issue a decision within 180 days, a claimant may still seek review by filing an action within 60 days of the expiration of the 180-day time period. *Id.* (citing 12 U.S.C. § 1821(d)(6)).

FIRREA directs the FDIC to disallow any untimely claim and provides that, subject to certain exceptions, "such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). An exception for late-filed claims applies if "'the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date'; in that case, a late-filed claim 'may be considered by the receiver,' provided the claim is 'filed in time to permit payment.'" *Freeman*, 56 F.3d at 1399 (quoting 12 U.S.C. § 1821(d)(5)(C)(ii)).

Here, the FDIC set December 30, 2008, as the deadline for administrative claims. The FDIC complied with its statutory notice requirements when it published notices of the receivership and deadline in the Wall Street Journal on October 1, 2008, and October 31, 2008. (*See* Def.'s Mot., Ex. A.)[6] Feldman did not file an administrative claim with the FDIC until August 3, 2009, over seven months after the deadline set by the FDIC. (*See* Am. Compl. ¶ 55.) Feldman's claim therefore "shall be disallowed and such disallowance shall be final" unless the

---

[6] Given the nature of the Ponzi scheme, the former business entities that Feldman represents were not "creditor[s] shown on the institution's books" at the time the notice was published, and they were therefore not entitled to notice by mail under 12 U.S.C. § 1821(d)(3)(C).

above-quoted exception applies to excuse Feldman's failure to submit a timely claim. *See* 12 U.S.C. § 1821(d)(5)(C)(i).

## II. THE LATE-FILED CLAIMS EXCEPTION DOES NOT APPLY.

Feldman does not dispute that she submitted her claim after the filing deadline. Rather, she argues that she nevertheless exhausted FIRREA's administrative remedies because her claim is covered by the statutory exception for late-filed claims, 12 U.S.C. § 1821(d)(5)(C)(ii). (Pl.'s Opp. at 8.)

Section 1821(d)(5)(C)(ii) provides an exception to FIRREA's general rule that untimely claims "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). The FDIC may consider a late-filed claim if "(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and (II) such claim is filed in time to permit payment of such claim." *Id*. § 1821(d)(5)(C)(ii). In arguing that the late-filed claims exception applies, Feldman contends that (1) she was entitled to notice by mail, (2) she received no notice of the receivership, and (3) she submitted a claim to the FDIC in time to permit payment. (Pl.'s Opp. at 8.)

Specifically, Feldman claims that the October 8, 2008 letter she sent to Washington Mutual Home Loans, Inc., made her an identifiable claimant whom the FDIC was statutorily required to notify of the receivership through a mailing within 30 days. (*Id.* (citing 12 U.S.C. § 1821(d)(3)(C)(ii)).) The FDIC argues that Feldman received the only notice to which she was entitled: publication of the receivership. Thus, in the FDIC's view, Feldman received adequate notice, and her late-filed claim is unreviewable. The Court agrees with the FDIC that Feldman has not satisfied the late-filed claims exception and thus has filed to file a timely claim with the

FDIC and has "forfeit[ed] any right to pursue a claim against the failed institution's assets in any court." *See Freeman*, 56 F.3d at 1400.

First, Feldman was not entitled to notice by mail. Feldman was not a "creditor shown on the institution's books" when the FDIC became receiver of Washington Mutual on September 25, 2008. *See* 12 U.S.C. § 1821(d)(3)(C). Nor do Feldman's allegations, presumed to be true at this stage of the litigation, demonstrate that the FDIC discovered that Feldman was a claimant, such that the FDIC was statutorily required to mail her notice within 30 days of that discovery. *See id.* § 1821(d)(3)(C)(ii). Feldman's October 8, 2008 letter, addressed to Mr. David Schneider, President of Washington Mutual Home Loan, Inc., was sent after Washington Mutual closed on September 25, 2008. Schneider was no longer an executive with the bank. Indeed, as Washington Mutual no longer existed, the bank could not be "advised" of Feldman's claims. Her letter therefore could not have, as required by statute, put the FDIC on notice that Feldman had a claim against Washington Mutual. (*See* Am. Compl. ¶ 54.)[7] And, the only notice that the

[7] Feldman cites to *Elmco Properties, Inc. v. Second National Federal Savings Ass'n*, 94 F.3d 914 (4th Cir. 1996), and *Iberiabank v. Coconut 41, LLC*, 2011 WL 4807701 (M.D. Fla. Oct. 11, 2011), for the proposition that her October 8, 2008 letter to Washington Mutual triggered the FDIC's obligation to mail her notice. (Pl.'s Opp. at 9.) With facts distinct from those here, those cases are inapposite.

The claimant in *Elmco* mailed a letter to the bank from which it sought a refund before the bank closed. *Id.* at 918. At the time the claimant mailed the letter, the Resolution Trust Company ("RTC"), which later became receiver of the bank, was acting as conservator of the bank. Of pivotal importance, after becoming receiver for the bank, the RTC responded to Elmco's letter in writing to address what RTC referred to as Elmco's "claim for a refund." *Id.* Thus, in *Elmco*, unlike this case, it was "clear on the record" that the receiver for the failed bank knew of Elmco's claims and its address. *Id.* at 921.

*Iberiabank* is also different than this case. In *Iberiabank*, the claimant asserted claims against the failed bank and served process on the vice-president of the failed bank after the FDIC had taken over as receiver. 2011 WL 4807701, at *4. It was clear that the FDIC learned of the claimant and its claim when the FDIC filed a motion to dismiss in the lawsuit, not just when the vice-president of failed bank was served. *Id.* "The lack of written notice from [the receiver],

FDIC was required to provide Feldman and other claimants in her position was through publication. *See* 12 U.S.C. § 1821(d)(3)(B).[8]

Second, Feldman's allegation that she did not receive notice of the receivership is unavailing. As a preliminary matter, Feldman fails to carry her burden of demonstrating the factual predicates needed to invoke the late-filed claims exception. *See Erby,* 424 F. Supp. 2d at 182 (citing *Lujan,* 504 U.S. at 561). Feldman does not allege that she lacked actual knowledge of the receivership or administrative-claims deadline. (*See* Am. Compl. ¶¶ 54–56.). Nor does she allege the specific date on which she learned of the receivership, which might demonstrate that she was not able to file a claim before the deadline. (*See id*.) Rather, Feldman merely alleges that the FDIC failed to provide her with notice by mail. (*See id*.) Thus, Feldman did not meet her burden to demonstrate the existence of jurisdiction by a preponderance of the evidence. *See Alkasabi v. Washington Mut. Bank, F.A. et al.*, 31 F. Supp. 3d 101, 108 (D.D.C. 2014).

Further, Feldman received adequate notice of the receivership by virtue of the FDIC's publications. *See id*. Given the fact that Washington Mutual's closing was "the largest bank failure in U.S. history" and was "widely publicized in 2008," Feldman was on inquiry notice of the receivership. *See id.* As a self-professed "experienced bankruptcy trustee who is eminently familiar with how claim-filing bar dates operate," Feldman's failure to file a timely claim cannot be excused.

---

coupled with the [receiver's] participation in the judicial proceedings, establishe[d] that the [receiver] ha[d] elected to proceed in a judicial forum and not administratively." *Id.* at *5.

[8] Even if Feldman were entitled to notice by mail, the FDIC's failure to mail the notice would not excuse Feldman's failure to file a timely claim. *See Freeman*, 56 F.3d at 1402 ("Even if the [claimants] never received the required § 1821(d)(3)(C) notice, however, they were still obliged to exhaust their administrative remedies as a condition of obtaining access to the district court.").

Given that Feldman's claim does not fit within the statutory exception for late-filed claims, her failure to exhaust FIRREA's administrative remedies deprives this Court of jurisdiction, *see Freeman*, 56 F.3d at 1402, and the FDICs' disallowance of her claim therefore "shall be final," *see* 12 U.S.C. § 1821(d)(5)(C)(i).

**III. FELDMAN'S CLAIMS ARE STATUTORILY TIME-BARRED.**

The FDIC argues in the alternative that Feldman's claims are time-barred by the Bankruptcy Code's statutory limitations, 11 U.S.C. § 546. (Def.'s Mot. at 15.) Feldman responds that her claim filed with the FDIC on August 3, 2009, tolled the statute of limitations. (Pl.'s Opp. at 11 (citing 12 U.S.C. § 1821(d)(5)(F)(i)).) Even if the Court had jurisdiction over this matter, Feldman's untimely claim with the FDIC would be insufficient to toll the statute of limitations. Her claims would therefore also be time-barred.

Feldman predicates her claims for relief on the Bankruptcy Code, 11 U.S.C. §§ 544 (Counts I and II), 547 (Counts III and IV), 548 (Count V), & 550 (Count VI). (*See* Am. Compl. at 12–16.) Sections 544, 547, and 548 are subject to the Bankruptcy Code's statute of limitations, which runs "2 years after the entry of the order of relief." 11 U.S.C. § 546(a).[9] Under 11 U.S.C. § 301, voluntarily filing bankruptcy constitutes an "order for relief," effective on the petition date, in this case September 18, 2007. Thus, Feldman's claim would have had to

---

[9] Section 546(a) provides:
An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
(A) 2 years after the entry of the order for relief; or
(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

have been filed by September 18, 2009 to satisfy the requirements of § 546. Feldman's claim, filed on November 16, 2009, plainly falls outside of the two-year time period. Nevertheless, Feldman contends that her August 3, 2009 proof of claim filed with the FDIC served to toll the limitations period pursuant to 12 U.S.C. § 1821(d)(5)(F)(i).[10]

FIRREA provides that "[f]or purposes of any applicable statute of limitations, the filing of a claim with the receiver shall constitute a commencement of an action." 12 U.S.C. § 1821(d)(5)(F)(i). As correctly argued by the FDIC, the "filing of a claim with the receiver" for purposes of tolling the statute of limitations would only be effective if the claim were *timely* filed. *See Nikols v. FDIC*, 9 F. Supp. 2d 137, 142 (D. Conn. 1998). Unless Feldman's failure to comply with FIRREA's administrative-claims process were excused—which, as discussed above, it was not– she did not "file a claim with the receiver" sufficient to toll the Bankruptcy Code's limitations period.

Feldman's claim under the Bankruptcy Code § 550 is not explicitly subject to the limitations period in § 546. However, a claim under § 550 is only viable if there has been an avoidance under one of the other sections of the Bankruptcy Code. *See* 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property

[10] As the Court finds Feldman's untimely claim would not have been effective to toll the statute of limitations, it need not determine whether the Bankruptcy Code's limitations period is a jurisdictional bar that would not be subject to tolling.

transferred, or, if the court so orders, the value of such property.") Thus, Feldman's § 550 cause of action fails without a viable claim under §§ 544, 547, or 548.

**CONCLUSION**

Accordingly, the FDIC's motion to dismiss for lack of subject matter jurisdiction is granted. The Court therefore need not address defendant's alternative arguments for dismissal, or its argument that the jury demand should be stricken. A separate Order accompanies this Memorandum Opinion.

/s/ Ellen Segal Huvelle
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 21, 2016